## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHESTER W. NOSAL and
NATASCHA NOSAL,                          :
                                         :
      Plaintiffs,                       :       Civil Action No.:      19-1359 (RC)
                                         :
      v.                                :       Re Document Nos.:      19, 20, 25
                                         :
INTERNAL REVENUE SERVICE,                :
                                         :
      Defendant.                        :

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

In this case brought under the Freedom of Information Act ("FOIA"), Plaintiffs, taxpayers Chester M. Nosal and Natascha Nosal, seek records from Defendant, the Internal Revenue Service ("IRS"), pertaining to their taxes.  Plaintiffs submitted a FOIA request for three categories of records: past tax forms, audit records, and records related to any whistleblower claims raised against them.  Plaintiffs take no issue with the IRS's treatment of the first two categories of records.  With respect to the whistleblower claims, however, the IRS asserts a so-called *Glomar* response, in which it refuses to confirm or deny whether any records exist. Plaintiffs maintain that the IRS cannot justify this response.  The IRS has moved for summary judgment, arguing that it has fulfilled its obligations under FOIA with respect to all three categories of documents.  Should the Court wish to review more evidence, the IRS has filed a motion for leave to file documents for *in camera* review that would further support the agency's *Glomar* response.  Additionally, Plaintiffs have filed a motion for a *Vaughn* index of any *in*

*camera* submission.  For the reasons stated below, the Court grants the IRS's motion for

summary judgment and denies as moot the other pending motions.

## II.  BACKGROUND

### A.  Plaintiffs' FOIA Request

Plaintiffs are individual taxpayers who reside in Florida.  Compl. ¶ 3, ECF No. 1.  In

early 2019, they submitted a FOIA request for three categories of records, offering to pay up to

$2,000 for copying costs.  *See id.* ¶¶ 5–6.  First, Plaintiffs requested "[w]histle-blower claims and

Form 211s[1] . . . related to alleged violations of the tax law by Chester W. Nosal . . . and/or

Natascha Nosal."  Compl. Ex. A at 2, ECF No. 1-1.[2]  Second, Plaintiffs asked for "1099s . . .

filed with the IRS for years 2000-2006 allegedly reporting alleged income by Chester W. Nosal

from Capacitive Deionization Technology Systems, Inc."  *Id.*  Third, Plaintiffs requested records

related to the "IRS Tax Audit Investigation . . . initiated on or about January 3, 2017 concerning

[Plaintiffs'] Form 1040."  *Id.*  Following the IRS's example, the Court refers to these three

categories of documents as Item 1, Item 2, and Item 3 respectively.

The IRS responded to Plaintiffs' request by advising "that such records, to the extent that

they exist, would be confidential and may not be disclosed unless specifically authorized by

law."  Compl. Ex. B at 3, ECF No. 1-2.  With respect to the requested 1099s, the IRS stated that

Plaintiffs should use the "routine procedure . . . used to request information returns."  *Id.*  The

agency closed Plaintiffs' request as imperfect and took no further action.  *Id.*  Plaintiffs then filed

an administrative appeal, arguing that the agency failed to conduct an adequate search for

---

[1] Form 211 is used by potential whistleblowers to provide information to the IRS regarding alleged violations of Federal income tax law.  *See* Simmons Decl. ¶ 45, ECF No. 19-3.

[2] For exhibits attached to the Complaint, the Court cites the page numbers generated by the electronic filing system.

responsive records and that the IRS failed to justify its withholding of responsive documents. *See* Compl. Ex. C, ECF No. 1-3.  After receiving a response from the agency stating that it may take several weeks to evaluate the appeal, *see* Compl. Ex. D, ECF No. 1-4, Plaintiffs filed this lawsuit.

After Plaintiffs filed their Complaint, the IRS reevaluated its response to the FOIA request.  With respect to Item 1, the IRS continues to assert a *Glomar* response, refusing to confirm or deny the existence or nonexistence of responsive records.  IRS's Statement of Undisputed Material Facts ("IRS's Statement of Facts") ¶ 17, ECF No. 19-1.  For Item 2, the IRS searched for responsive documents, but determined that due to the age of the requested 1099s, any responsive records would have been destroyed under the IRS's record retention policies.  *See id.* ¶¶ 85–101.  As for Item 3, the IRS produced 925 pages of responsive records with minor redactions applied pursuant to FOIA Exemptions 3 and 7(E).  *See id.* ¶¶ 122–24.  The IRS now moves for summary judgment based on its claimed exemptions and the adequacy of its search for responsive records.  *See* IRS's Mem. Supp. Mot. Summ. J. ("IRS's Mot."), ECF No. 19-2.  The IRS also filed a motion for leave to file documents for *in camera* review, in case the Court is not satisfied with the submission made on the public docket.  *See* IRS's Mot. for Leave to File, ECF No. 20.  Plaintiffs filed a motion for a *Vaughn* index of any materials submitted for *in camera* review.  *See* Pls.' Mot. for Vaughn Index, ECF No. 25.[3]

---

[3] It appears that Plaintiffs mistakenly believed that the IRS had already submitted materials for *in camera* review when they filed their motion.  *See id.* at 2 (" . . . those documents, in addition to others, were among those recently submitted to the Court for *in camera* review.").  No *in camera* submission has yet been made, but the Court will consider Plaintiffs' motion as a request for whatever materials, if any, are ultimately submitted for *in camera* inspection.

### B.  Materials Supporting the IRS's Motion for Summary Judgment

In support of its motion for summary judgment, the IRS submitted two declarations. First, Joshua R. Simmons, an attorney in Branch 6 of the Office of the Associate Chief Counsel, submitted a declaration outlining the administrative processing of Plaintiffs' FOIA request, the search for responsive records, the IRS's whistleblower claim process, and the reasons underlying the IRS's *Glomar* response and claimed exemptions.  *See generally* Simmons Decl.  The declaration explains that the IRS makes its *Glomar* response for Item 1 in conjunction with FOIA Exemptions 3, 5, 6, 7(C), and 7(D).  *See id.* ¶¶ 66–89.  For Item 2, the Simmons Declaration recounts the agency's search for responsive records within the IRS's Integrated Data Retrieval System and Federal Records Center campuses, where older documents are housed.  *See id.* ¶¶ 33–44.  Mr. Simmons explains that under IRS record retention policies, the requested records would have been destroyed and that "there are no other locations likely to contain records responsive to item (2) of Plaintiffs' request."  *Id.* ¶ 43.  Finally, with respect to Item 3, Mr. Simmons details the search for and production of records relating to the examination of Plaintiffs' income tax return.  *See id.* ¶¶ 19–32.  His declaration explains that, of the 925 pages produced, six pages of the production were "withheld in part because those pages contain Discriminant Index Function (DIF) score information that is exempt from disclosure under FOIA exemptions 3, in conjunction with 26 U.S.C. § 6103(b)(2) and (e)(7), and 7(E)."  *Id.* ¶ 30.

The IRS also submitted the declaration of Vikramsing R. Barad, an attorney serving as a Senior Technician Reviewer in Branch 6 of the Office of the Associate Chief Counsel.  Barad Decl. ¶ 1, ECF No. 19-7.  Mr. Barad provides an explanation of Discriminant Index Function ("DIF") scores, which the IRS uses to determine whether a tax return should be selected for examination, and the reasons the IRS does not publicly disclose them.  *See id.* ¶¶ 7–9.  His

declaration provides support for the IRS's claims of Exemption 3, in conjunction with 26 U.S.C. § 6103(b)(2), and Exemption 7(E) related to DIF scores.  *See id.* ¶¶ 10–15.  Mr. Barad also provides further support for the *Glomar* response pursuant to his "delegated authority pursuant to DO 11-2 and the DO 11-2 Reference Chart under 26 U.S.C. § 6103(e)(7)[4] to determine whether disclosure of return information . . . would seriously impair tax administration."  *Id.* ¶ 22.  His declaration states that he has "determined that any whistleblower records that may exist and the existence of such records in this case may be withheld under § 6103(e)(7) (in conjunction with FOIA exemption 3)."  *Id.*

### III.  LEGAL STANDARD

The purpose of FOIA "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  FOIA requests thus provide individuals with the opportunity to obtain access to federal agency records, except to the extent that such records are protected from public disclosure by one of nine exemptions. *See* 5 U.S.C. § 552(a)(3), (a)(4)(B), (b), (c); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 738 (D.C. Cir. 2017). Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see, e.g.*, *Alyeska Pipeline Serv. Co. v. U.S. EPA*, 856 F.2d 309, 314 (D.C. Cir. 1988) (concluding that unsubstantiated claims of factual controversies cannot defeat a summary judgment decision in a

---

[4] 26 U.S.C. § 6103(e)(7) allows the IRS to withhold return information if the IRS determines "that such disclosure would [] seriously impair Federal tax administration."

FOIA case).  FOIA cases are typically resolved through summary judgment because in FOIA

cases there is rarely any factual dispute; instead, these cases center on how the law is applied to

the records at issue.  *See Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338, 352 (D.D.C. 2017)

("FOIA cases typically and appropriately are decided on motions for summary judgment."

(quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009))); *see also*

*Gray v. Southwest Airlines Inc.*, 33 Fed. App'x 865, 868 n.1 (9th Cir. 2002) (citing *Schiffer v.*

*FBI*, 78 F.3d 1405, 1409 (9th Cir. 1996))  Accordingly, in a FOIA suit, summary judgment is

appropriate "if no material facts are genuinely in dispute and the agency demonstrates 'that its

search for responsive records was adequate, that any exemptions claimed actually apply, and that

any reasonably segregable non-exempt parts of records have been disclosed after redaction of

exempt information.'"  *Prop. of the People, Inc. v. Off. of Mgmt. and Budget*, 330 F. Supp. 3d

373, 380 (D.D.C. 2018) (quoting *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181

(D.D.C. 2017)).

## IV.  ANALYSIS

The three Items requested by Plaintiffs correspond to three responses from the IRS.

Plaintiffs do not challenge the agency's response to Items 2 and 3.  *See* Pls.' Opp'n to Mot.

Summ. J. ("Pls.' Opp'n"), ECF No. 26.  Given Plaintiffs' lack of objection and based on the

materials submitted by the IRS, the Court finds that the agency has sufficiently justified its

responses to Items 2[5] and 3[6] and therefore grants summary judgment in the IRS's favor for those

portions of the FOIA request.  The Court dedicates the remainder of its discussion to the *Glomar*

response.

### A. The *Glomar* Response

In certain circumstances, an agency may refuse to confirm or deny that it has relevant

records in response to a FOIA request.  The *Glomar* response takes its name from *Phillippi v.*

*CIA*, where the Central Intelligence Agency refused to confirm or deny the existence of records

related to a large research ship named the Hughes Glomar Explorer.  *See* 546 F.2d 1009, 1009–

10 (D.C. Cir. 1976).  A *Glomar* response is appropriate only when "'confirming or denying the

existence of records would' itself reveal protected information."  *Bartko v. Dep't of Justice*, 62 F.

---

[5] After conducting a search and finding no responsive records, the IRS determined that any responsive records to Item 2 would have been destroyed under the agency's record retention policies.  *See* Simmons Decl. ¶ 43.  To fulfill its obligations under FOIA, an "agency must demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant documents.'"  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (quoting *Weisberg v. U.S Dep't of Justice*, 705 F.2d 1344, 1350–51 (D.C. Cir. 1983)).  A reasonably detailed declaration describing the search performed and "averring that all files likely to contain responsive materials (if such records exist) were searched," *Mobley v. C.I.A.*, 806 F.3d 568, 580–81 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)), will satisfy the agency's burden.  Here, the Court is satisfied, based on the detailed declaration submitted by the agency, that despite not having found any responsive records, the IRS conducted a search reasonably calculated to uncover the requested documents, fulfilling its obligations with respect to Item 2.  *See* Simmons Decl. ¶¶ 33–44.

[6] After conducting a search for responsive records, the IRS disclosed 925 pages of records responsive to Item 3, withholding in part portions of the records that contained DIF score information pursuant to FOIA Exemptions 3 and 7(E).  *See* Simmons Decl. ¶¶ 29–31.  Given that Plaintiffs make no argument in opposition, and that "[c]ourts have routinely held that DIF scores are exempt from disclosure," *Goldstein v. I.R.S.*, 174 F. Supp. 3d 38, 51–52 (D.D.C. 2016) (collecting cases), the Court finds that the IRS has fulfilled its obligations to conduct an adequate search for records and disclose all non-exempt information with respect to Item 3.  The Court also finds that the IRS has fulfilled its obligations to release all reasonably segregable non-exempt information for Item 3.  *See* Simmons Decl. ¶ 28 ("I have reviewed the entirety of the administrative file and made every reasonably segregable non-exempt portion of every responsive record therein available to Plaintiffs.").

Supp. 3d 134, 141 (D.D.C. 2014) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)).  That is to say, the agency must "tether its refusal to respond . . . to one of the nine FOIA exemptions."  *Montgomery v. Internal Revenue Serv.*, 330 F. Supp. 3d 161, 168 (D.D.C. 2018) (quoting *Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009)).  When evaluating the appropriateness of a *Glomar* response, "the focus is not on 'the actual content of the documents but on whether the potential harm created by revealing the existence of the documents is protected by [the] FOIA exemption."  *Id.* (quoting *Parker v. Dep't of Justice Exec. Off. for U.S. Attys.*, 852 F. Supp. 2d 1, 10 (D.D.C. 2012)).  As such, "courts apply the general exemption review standards established in non-*Glomar* cases."  *Leopold v. Dep't of Justice*, 301 F. Supp. 3d 13, 28 (D.D.C. 2018).  A proper *Glomar* response exempts the agency from searching for responsive records.  *See Wheeler v. CIA*, 271 F. Supp. 2d 132, 141 (D.D.C. 2003).

To support its *Glomar* response to Item 1, the IRS invokes FOIA Exemptions 3 (in conjunction with 26 U.S.C. § 6103(e)(7)), 5, 6, 7(C), and 7(D).  Simmons Decl. ¶ 67.  Because the Court finds Exemption 3 appropriately applies, the Court does not address the other claimed exemptions.[7]

Exemption 3 allows an agency to withhold records "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  The IRS invokes Exemption 3 in conjunction with 26 U.S.C. § 6103(a), which states that "[r]eturns and return information shall be confidential." *See Tax Analysts v. Internal Revenue Serv.*, 117 F.3d 607, 611 (D.C. Cir. 1997) ("That § 6103 is the sort of nondisclosure statute contemplated by FOIA exemption 3 is beyond dispute."); *see*

---

[7] Because the Court grants the IRS's motion for summary judgment based on its application of *Glomar* and Exemption 3, it denies as moot the IRS's motion to submit documents for *in camera* review and Plaintiffs' motion for *Vaughn* index.

*also Church of Scientology of Cal. v. Internal Revenue Serv.*, 792 F.2d 146 (D.C. Cir. 1986).

Under the statute, "return information" means:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A).  The IRS may not disclose returns or return information if it "determines that such disclosure would [] seriously impair Federal tax administration."  *Id.* § 6103(e)(8).

The IRS argues that whistleblower records constitute return information and that disclosing the existence of any whistleblower records would seriously impair Federal tax administration.  *See* IRS's Mot. at 10–11.  Because information from a whistleblower "can result in the civil or criminal investigation and an assessment and collection of tax liability," the IRS contends that 26 U.S.C. § 6103 shields the information from disclosure.  *Id.* at 10.  The agency argues that disclosure would seriously impair tax enforcement because whistleblowers are promised that their identities will remain private and disclosure would likely "deter future whistleblowers from providing the [IRS] with information about potential violations of the tax laws that the [IRS] might not otherwise discover."  *Id.* at 11.  The IRS argues that a *Glomar* response is appropriate because "[i]f the [IRS] acknowledged only the nonexistence of records, taxpayers could deduce when there is a whistleblower claim."  *Id.*  The agency's declaration further explains that whistleblower forms are considered "return information" because "the records—as well as the mere fact of the records' existence—reflect 'whether the taxpayer's

return was, is being, or will be examined or subject to other investigation or processing.'"  Barad Decl. ¶ 17 (quoting 26 U.S.C. § 6103(b)(2)).  Mr. Barad, pursuant to his authority under DO 11-2 and the DO 11-2 Reference Chart to determine whether disclosure of return information would seriously impair tax administration, has "determined that any whistleblower records that may exist and the existence of such records in this case may be withheld under § 6103(e)(7) (in conjunction with FOIA Exemption 3), and accordingly, application of this exemption supports the IRS's issuance of a *Glomar* response in this case."  *Id.* ¶ 22.  Plaintiffs do not address the applicability of Exemption 3, instead suggesting, without citation to any precedent, that the IRS's *Glomar* response should "only be available to a bona fide whistleblower."  Pls.' Opp'n at 4.

The Court concludes that the IRS appropriately issued a *Glomar* response in conjunction with Exemption 3.  As an initial matter, the Court finds that the broad definition of "return information" encompasses not only the contents of whistleblower records, but also the existence or non-existence of such records.  The existence or non-existence of whistleblower records plausibly falls within two portions of the definition of "return information."  First, the Court agrees with Mr. Barad that the existence of whistleblower records "reflect[s] 'whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing.'"  Barad Decl. ¶ 17 (quoting 26 U.S.C. § 6103(b)(2)).  If whistleblower records exist with respect to a particular taxpayer, that information tends to show that the taxpayer's return may be subject to examination.  As such, whistleblower records would fall within the express terms of the statutory definition of "return information."  Moreover, the existence of whistleblower records plausibly constitutes "other data, received by . . . furnished to, or collected by the [IRS] with respect . . . to the determination of the existence, or possible existence, of [tax] liability."  26 U.S.C. § 6103(b)(2).  Indeed, in an analogous case, the D.C. Circuit read the "other

data" portion of the definition of "return information" to include, and therefore exempt from disclosure under Exemption 3, "the identities of third parties who requested audits or investigations and the contents of their communications." *Landmark Legal Found. v. Internal Revenue Serv.*, 267 F.3d 1132, 1135 (D.C. Cir. 2001). The court reasoned that a statement of the identity of the third parties "communicates the factual proposition that someone's name is in the IRS files in connection with that person's payment or non-payment of taxes," bringing it within the meaning of "other data" as used in 26 U.S.C. § 6103(b)(2)(A). *Id.* at 1136. Here, the existence of whistleblower records would communicate the factual proposition that someone submitted a whistleblower complaint to the IRS in connection with a particular individual's payment or non-payment of taxes. Given the broad sweep of the statutory definition of "return information," the Court finds that whistleblower records fall within its ambit.

The Court agrees with the IRS that disclosure of the existence of whistleblower records would seriously impair Federal tax administration. Disclosure of the existence of whistleblower records could lead to three distinct harms that could seriously impair Federal tax administration. First, as Mr. Barad explains in his declaration, protecting the confidentiality of whistleblower records protects the effectiveness of the whistleblower program as a whole, encourages voluntary reporting of information that may lead to prosecution of violations of federal income tax laws, and "prevent[s] reprisals against whistleblowers who come forward with such information." Barad Decl. ¶ 18. Thus, avoiding the impairment of Federal tax administration requires protection of the identity of whistleblowers not just for the benefit of that particular whistleblower, but also for the benefit of the whistleblower program as a whole. Preserving the integrity of the whistleblower program requires ensuring that future whistleblowers feel sufficiently confident coming forward with potentially valuable information in the knowledge

that their identities too will be protected.  Protecting the interests of the program as a whole also requires that whistleblowers' identities be protected even within historical documents in situations where the individual whistleblower may no longer be subject to reprisal.  Both Mr. Simmons and Mr. Barad speak to the risk of harm to the entire whistleblower program in acknowledging the existence of records.  *See* Simmons Decl. ¶ 70 ("[T]he only way for the IRS to maintain the confidentiality of whistleblowers' identities and adequately protect *all* whistleblower records . . . is to consistently issue a *Glomar* response to *every* FOIA request seeking whistleblower information." (emphasis added)); Barad Decl. ¶ 21 ("[M]aintaining the confidentiality of the existence and identity of whistleblowers requires that the IRS consistently issue a *Glomar* response to *every* FOIA request seeking whistleblower information." (emphasis added)).

Second, with respect to the protection of the identities of individual whistleblowers, the Court agrees that even acknowledging the existence or non-existence of whistleblower records "may imply or confirm the identity of that whistleblower," especially in cases where a party "claim[s] to know the identity or identities of the purported whistleblower(s)." *Id.* ¶ 19.  For example, in a scenario where there is only one suspected whistleblower, confirming or denying the existence of whistleblower records would necessarily confirm or refute the suspicion; if the IRS confirmed the non-existence of records in some cases, but not others, it would be easy to determine when whistleblower records existed.  Allowing the public to deduce whether whistleblower records exist with respect to particular taxpayers would undermine the effectiveness of the anonymous reporting system with respect to the individual whistleblowers at issue.  But protecting the anonymous nature of the reporting system as a whole is also important to ensure the future flow of potentially valuable whistleblower information for whistleblowers

who might otherwise be reluctant to step forward absent the knowledge that their anonymity will also be preserved.

Finally, beyond the protection of whistleblower identities, in cases involving contemporaneous records, acknowledging the existence of whistleblower records may alert a taxpayer of an imminent or ongoing but nonpublic IRS audit/investigation leading that taxpayer to potentially destroy evidence, intimidate witnesses, or engage in other undesirable acts that would also seriously impair Federal tax administration. Although such harm is typically prevented through a *Glomar* response and Exemption 7(A), *see Leopold v. Dep't of Justice*, 301 F. Supp. 3d 13, 27–28 (D.D.C. 2018) (describing the rationale of a *Glomar* response to protect ongoing law enforcement proceedings), it can also be prevented in the tax enforcement context through a *Glomar* response and Exemption 3 in conjunction with 26 U.S.C. § 6103. And, again, denying the existence of whistleblower records in only some instances would necessarily confirm the existence of such records in others. In this scenario, protecting the existence of the records at all could be critical to the success of the audit/investigation and, thus, to the success (and lack of impairment) of Federal tax administration.

Thus, only by using a blanket *Glomar* response in all situations involving whistleblower records as a category can the IRS avoid the impairment of Federal tax administration in all situations, by protecting the integrity and viability of the whistleblower program as a whole, the confidentiality of whistleblowers, and the viability of imminent or ongoing audits/investigations. *Montgomery*, 330 F. Supp. 3d at 171 (explaining this rationale with respect to whistleblower identity in the context of Exemption 7(D)). Plaintiffs make no effort to rebut these various bases for the IRS asserting a *Glomar* response in this context. As such, the Court finds that the IRS

13

has appropriately invoked *Glomar* in conjunction with Exemption 3 and therefore has satisfied its obligations under FOIA with respect to Item 1.

## V.  CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 19) is **GRANTED**.  Defendant's motion for leave to file documents for *in camera* review (ECF No. 20) is **DENIED AS MOOT**.  Plaintiffs' motion for *Vaughn* index (ECF No. 25) is **DENIED AS MOOT**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 3, 2021                                                    RUDOLPH CONTRERAS
                                                                                      United States District Judge